CHARTER OAK INVESTMENT COMPANY, A CORPORATION, APPELLANT, v. ARTHUR F. FELKER, RESPONDENT.—96 S. W. (2d) 887.

St. Louis Court of Appeals. Opinion filed October 6, 1936.

*Banister, Leonard, Sibley & Susman* for appellant.

*Garvey & Felker, Taylor, Mayer & Shifrin* for respondent.

HOSTETTER, P. J.—This is a suit to recover $2400 as rent for one year of a certain apartment located on the west side of the first floor of the Apartment Building, No. 4905 Lindell Boulevard, St. Louis, Missouri. The year for which recovery is sought began October 1, 1931, and ended October 1, 1932, and the amounts sought were $200 per month.

The petition contained twelve counts, one for each of the twelve months. The suit was instituted in the Circuit Court of the City of St. Louis on the 10th day of August, 1933.

Defendant in his answer admitted owing $200 per month rent for the first seven months sued for, but denied that plaintiff was entitled to any interest or costs.

After a jury trial, which was concluded on October 10, 1934, a verdict was reached in favor of plaintiff for $1400 and interest amounting to $233.33, aggregating $1633.33, upon which judgment was entered on the same day, and the plaintiff, after an ineffective motion for a new trial, duly perfected its appeal to this court from the alleged insufficient amount of its recovery.

The lease contract between plaintiff and defendant, which became effective on the first day of October, 1930, provided for the payment by the latter of $200 in advance on the first day of each month, and contained the following clauses, viz.:

"(1) The Lessee shall have the right to terminate said lease at any time after May 1, 1931, upon 30 days written notice to the Lessor of his intention to terminate the lease 30 days thereafter, provided he shall by that time have completed a residence, purchased a residence, all ready for his occupancy.

"(2) In case said Lessee shall not, on or before September 15, 1931, have commenced the construction of a residence, to be occupied by him when same is completed, or purchased a residence, then this lease shall be automatically extended for a term of one (1) year from October 1, 1931, at the same rental and terms in said lease, but such extended term of said lease may be canceled at any time after May 1, 1932, upon 30 days written notice to the Lessor of his intention to terminate said lease 30 days thereafter, provided he shall by that time have completed a residence or purchased a residence all ready for his occupancy."

A brief history of antecedent events, including two suits by plain-

tiff lessor against defendant lessee, may serve to clarify the issues in the instant case. It is agreed by both parties that all rents for the first year, i. e.: up to October 1, 1931, were **paid.**

In September, 1931, defendant gave notice to plaintiff that he had purchased a house and thereby canceled or terminated the lease, but he continued to occupy the property. About that time he began negotiations with representatives of his corporate landlord looking toward securing a reduction of the rent from $200 to $180 per month. These negotiations continued in a friendly manner during the months of October, November and December, 1931, without any tangible results. During this three months' period plaintiff lessor, by its representatives, offered to give defendant a new lease at $180 per month, but imposed certain conditions which he didn't like and, consequently, he wouldn't sign a new lease, but he repeatedly offered them rent checks for $180 per month, which were refused with fine scorn.

In the meantime, the attitude of both parties changed from that of friendly negotiations to that of heated hostility, defendant feeling that plaintiff's representatives had purposely and deceptively procrastinated and pursued Fabian tactics in order to lure and lull him into the false hope of securing a reduction of rent until the time should pass when he could vacate the premises, and plaintiff's representatives apparently taking offense at his failure to pay the $200 a month for the last three months of 1931, after receiving notice so to do.

Plaintiff then brought suit in a justice of the peace court against defendant for $600 past due rent, covering the months of October, November and December, 1931, and took defendant's deposition in said suit and in said deposition defendant testified that he had canceled the lease, and, therefore, held over as a month to month tenant.

Thereupon, plaintiff dismissed such suit, and, on January 29, 1932, instituted an unlawful detainer suit against defendant in a justice of the peace court (which was removed to the ·Circuit Court by *certiorari*), and sought recovery with the idea that the unpaid monthly rentals of $200 each would be doubled by the court, as provided by Section 2464, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 2464, p. 2513), relating to unlawful detainer. Defendant then deposited $1000 with the clerk of the court to cover five months' rent at $200 per month, which plaintiff refused to accept, and, upon a trial in the Circuit Court, it was held that plaintiff could not recover and the court peremptorily directed the jury to return a verdict finding defendant not guilty of unlawful detainer. On appeal this court affirmed the ruling of the trial court on the ground that defendant's act in giving a notice in September, 1931, followed by his continued oc-

cupancy of the property did not have the effect of canceling or terminating the lease, and, therefore, he was not guilty of unlawful detainer. [See Charter Oak Investment Co. v. Felker (Mo. App.), 60 S. W. (2d) 655.]

Thereafter, the instant suit was begun.

It was shown in testimony in the instant case that defendant gave a written notice to plaintiff by mail on March 27, 1932; that it was signed by him, stamped and addressed to the Charter Oak Investment Company, with his return address on the envelope and deposited in a U. S. Post Office box and was never returned to him. Plaintiff's representatives denied that it was ever received.

The letter read as follows:

"In accordance with the conversation had at the time of the trial please be notified I am moving out of the apartment on or before April 30th, thereby cancelling the lease."

There was also testimony that at the time of the sending of this letter defendant had purchased the home he was living in at the time of the trial and that he moved out on April 28th, and left some duplicate keys on the kitchen window sill and met Mr. Banister, Jr., a representative of plaintiff, on the same day and gave him the key to the front door and advised him that he was moving out, vacating the premises, and that Banister said, "Yes, I have seen you moving and that's O. K. with me; we don't want anybody in there that we have to have litigation with," and that defendant said, "We are happy to get out."

It was further shown in evidence that the janitor of the building at the time of the moving, took a shade out of the premises to give to another tenant and that shortly thereafter a "for rent" sign was put up right in front of the apartment and some time thereafter the building was being cleaned by sand blasters and the windows in the vacated apartment were boarded up.

Much of this testimony was disputed, but the verdict of the jury in favor of defendant's version is binding on us.

It is contended by plaintiff's counsel that, under the terms of the lease, it could not be terminated until after May 1st, stressing that portion of the lease in support of such contention, reading as follows:

". . . but such extended term of said lease may be canceled at any time after May 1, 1932, upon 30 days written notice to the Lessor of his intention to terminate said lease 30 days thereafter, provided he shall by that time have completed a residence or purchased a residence all ready for his occupancy."

It will be noted that the lease requires the lessee to pay the monthly rental "in advance on the first day of each and every month." Consequently, the clause giving defendant the right to cancel only

"after May 1, 1932," left it uncanceled on the day when defendant was obligated to pay the month's rent.

We are, on account of the peculiar wording of the lease, of the opinion, that defendant had not the right to cancel the lease on May 1st, or prior thereto, but only *after* May 1st, which left him liable for the payment of rent for the month of May.

It follows that we are constrained to hold that the trial court erroneously refused plaintiff's instruction No. 3-A, reading as follows:

"The Court instructs the jury that under the provisions of the lease which has been read in evidence, the term of said lease could not be terminated until after May 1, 1932, and in consequence thereof the plaintiff herein is entitled to recover rent for the demised premises at least up to June 1, 1932, even though you may believe and find from the evidence that the notice which defendant claims to have prepared and mailed to the plaintiff was actually received by the plaintiff."

Defendant has filed no brief. We find further that the notice given by defendant, and his subsequent evacuation of the premises on April 28, 1932, was sufficient to cancel the lease prior to June 1, 1932.

In view of our conclusion on the interpretation of the lease we find it unnecessary to discuss other points mentioned in plaintiff's brief.

It follows that the judgment of the trial court should be reversed and the cause remanded with directions to said court to set aside its judgment of $1633.33 rendered on October 10, 1934, and to enter in lieu thereof a new judgment of that date in favor of plaintiff and against defendant for the sum of $1862.66, together with interest thereon from said date at the rate of six per cent per annum, together with costs, and it is so ordered. *Becker* and *McCullen, JJ.*, concur.